IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DAWN WRIGHT and JOY BARRETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION |
| v. | ) | FILE NO. _____ |
| | ) | |
| TRIMARK HEALTH SERVICES, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COME NOW Dawn Wright and Joy Barrett, Plaintiffs in the above-styled case ("Plaintiffs"), and for their Complaint against Trimark Health Services, Inc. ("Trimark" or "Company"), show this Court as follows:

## INTRODUCTION

1.

Plaintiffs bring this case pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), to recover from Trimark: (1) unpaid overtime compensation; (2) liquidated damages; (3) front pay; (4) compensatory damages; (5) prejudgment and post-judgment interest; and (6) attorneys' fees and costs. Plaintiffs also seek declaratory and injunctive relief.

## PARTIES

### 2.

Dawn Wright is a Georgia resident whose address is 221 Upper Riverdale Road, Apt. 9-F, Jonesboro, Georgia 30236.

### 3.

Joy Barrett is a Georgia resident whose address is 3194 Mill Springs Circle, Buford, Georgia 30519.

### 4.

Trimark is a foreign corporation with its principal office in this state located at 2751 Buford Hwy., Suite 300, Atlanta, Georgia 30324. Trimark may be served through its registered agent Frances C. Adkins at 2751 Buford Hwy., Suite 300, Atlanta, Georgia 30324.

## JURISDICTION AND VENUE

### 5.

This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391 because the conduct making up the basis of the complaint took place in this judicial district.

7.

This Court has personal jurisdiction because Trimark is subject to service in this judicial district.

## FACTS

8.

On December 21, 2007, Trimark hired Ms. Wright at Trimark's business, located at 2751 Buford Hwy., Suite 300, Atlanta, Georgia 30324

9.

Ms. Wright was an employee of Trimark from December 21, 2007 until her termination on March 14, 2014.

10.

During her employment with Trimark, Ms. Wright worked at Delmar Gardens of Gwinnett, a continuing care retirement community staffed by Trimark.

11.

Trimark originally hired Ms. Wright as a nursing assistant but in January 2009, moved her to a position in which she spent half of her time as a nursing assistant at Delmar Gardens of Gwinnett and half of her time as an assistant to the Trimark case manager at Delmar Gardens of Gwinnett.

12.

Ms. Wright did not perform her duties for Trimark in or about a private home.

13.

Ms. Wright's primary duties did not include the exercise of discretion and independent judgment with respect to matters of significance.

14.

When Ms. Wright began working at Trimark on December 21, 2007, Trimark paid her a rate of $8.30 per hour. Starting August 2012, Trimark paid Ms. Wright an hourly rate of $8.60 per hour.

15.

During Ms. Wright's employment with Trimark, she worked more than sixty (60) hours per week.

16.

Ms. Wright generally worked twelve (12) days in a row and then had two (2) days off.

17.

Ms. Wright's work shifts consisted of at least twelve (12) hours per day.

18.

Trimark required Ms. Wright to carry a Trimark-owned cell phone at all times, even when she was not at work, and required Ms. Wright to respond to frequent calls from Trimark immediately.

19.

Trimark would occasionally pay Ms. Wright time and one-half if she worked holidays, as specifically required by Trimark's handbook.

20.

Other than that occasional holiday pay however, Trimark never paid Ms. Wright overtime wages of time and one-half the statutory minimum rate of pay for work she performed above forty (40) hours per week, as required by state and federal law.

21.

On September 18, 2008, Trimark hired Ms. Barrett at Trimark's business, located at 2751 Buford Hwy., Suite 300, Atlanta, Georgia 30324. Ms. Barrett was an employee of Trimark from September 18, 2008 until her resignation on March 29, 2013.

22.

Trimark hired Ms. Barrett as a case manager and employed her in that position until her resignation on March 29, 2013.

23.

During Ms. Barrett's employment by Trimark, she worked at the Trimark offices located at Delmar Gardens of Gwinnett and Dunwoody Pines, a retirement center staffed by Trimark.

24.

Ms. Barrett's primary duties for Trimark did not include the exercise of discretion and independent judgment with respect to matters of significance.

25.

Trimark originally hired Ms. Barrett at a rate of $33.65 per hour. In August 2012, Trimark raised Ms. Barrett's wage to a rate of $35.03 per hour and paid her that hourly rate until her resignation.

26.

During Ms. Barrett's employment by Trimark, she worked well over sixty (60) hours per week.

27.

Trimark required Ms. Barrett to carry a Trimark-owned cell phone at all times and was expected to respond to frequent calls from Trimark immediately.

28.

Both Trimark offices where Ms. Barrett worked called her every day of the week at 7:00 a.m., 7:30 a.m., and 7:00 p.m., including on her scheduled days off. Often she had to do immediate administrative work following those calls.

29.

If Ms. Barrett worked less than forty (40) hours a week, Trimark paid her only for the hours she worked.

30.

Trimark never paid Ms. Barrett time and one-half, the statutory minimum rate of pay for work performed above forty (40) hours per week, as required by state and federal law.

31.

Prior to the filing of this Complaint, on September 18, 2013, Plaintiffs, through counsel, sent a letter to Trimark complaining about FLSA violations against both Plaintiffs and indicating their intention to file a lawsuit unless the parties could resolve the matter.

32.

After Plaintiffs complained of FLSA violations and indicated their intention to file a lawsuit, Trimark engaged in a campaign of retaliatory behavior against both Plaintiffs.

33.

The retaliatory behavior occurred while the parties were engaged in ongoing communications concerning resolutions of this matter prior to litigation.

34.

The parties engaged in written communications about Plaintiffs' complaints of FLSA violations on numerous occasions, including October 23, 2013, October 30, 2013, November 13, 2013, November 20, 2013, December 6, 2013, December 20, 2013, January 3, 2014, January 22, 2014, and February 24, 2014.

35.

The September 18th letter Plaintiffs sent to Trimark detailed why the professional exemption did not apply to Ms. Barrett because "Ms. Barrett's primary duty was not the performance of work requiring the advanced knowledge obtained by her licensure as a registered nurse."

36.

On October 9, 2013, in response to the September 18th letter, Trimark, through counsel, threatened Ms. Barrett that the statement in the letter "may put on Trimark the obligation to report to the Georgia State Board of Nursing Ms. Barrett's description of how she spent the majority of her time while having agreed to perform her duties as an R.N. Case Manager."

37.

Trimark's threat to Ms. Barrett was made to dissuade her from bringing a claim for an FLSA violation.

38.

Trimark's retaliation against Ms. Wright also began almost immediately after Plaintiffs sent the September 18th letter and culminated in her termination on March 14, 2014.

39.

On September 21, 2013, Ms. Wright injured her back on the job when she caught a resident to prevent her from falling down. She was not given any instruction about how she was supposed to handle her injury, so she went to an immediate care clinic as directed by Delmar Gardens, and was prescribed physical therapy.

40.

Ms. Wright was not approved to undergo physical therapy until October 14, 2013. She was told by a representative of Trimark's insurance company handling her workers' compensation claim that the delay in approving her treatment occurred because Trimark would not respond to the insurance company's requests for information about Ms. Wright's compensation. That information was needed in order to determine her weekly income benefits and proceed with handling her claim. There was a similar delay in providing Ms. Wright with her workers' compensation weekly benefit payments.

41.

To add insult to injury, while Ms. Wright was out of work due to her back injury, Ms. Adkins called her to reprimand her for not letting the resident just fall.

42.

After Ms. Barrett's resignation on March 29, 2013, Trimark hired Janice Pounders to replace Ms. Barrett.

43.

Around the time of Ms. Pounder's hire, Ms. Adkins told Ms. Wright that she would be given a raise if she worked under Ms. Pounders for six months. After Ms. Wright questioned whether she was assured the raise in six months, Ms. Adkins asked Ms. Wright to trust her and said that she was a woman of her word.

44.

Ms. Wright was out of work due her on-the-job back injury when the six months expired, but she asked about the promised raise in November 2013 after returning to work.

45.

Despite her previous assurance, Ms. Adkins refused to provide Ms. Wright with the promised raise.

46.

When Ms. Wright asked Ms. Pounders about her raise, Ms. Pounders said that because of Ms. Wright's threatened lawsuit neither she nor anyone else at Trimark was getting a raise.

47.

Ms. Pounders told Ms. Wright that she should have waited until after the six months to threaten litigation.

48.

On February 17, 2014, Michelle Snerley, Trimark's Human Resources Director, called Ms. Wright and asked her to come into Trimark's office the next morning, instead of reporting to Delmar Gardens.

49.

When Ms. Wright arrived at Trimark's office the next day, she met with Ms. Snerley who informed her that she was being given a one-day suspension for allegedly calling out of work. Ms. Wright emphatically disagreed that she had done so, because she had confirmed with Dianna Sokoh, who worked on Trimark's staffing that she had the day off.

50.

That was the first time that Ms. Wright had ever been reprimanded by Trimark, much less suspended.

51.

In addition to suspending her, Trimark initially charged Ms. Wright a $50 no-call/no-show penalty for not working the day she had off.

52.

Several days later on February 20, 2014, Ms. Snerley again asked Ms. Wright to come into Trimark's office rather than report to Delmar Gardens.

53.

When Ms. Wright arrived at Trimark's office on February 21, 2014, she met with Ms. Snerley, Ms. Adkins, and Ms. Pounders.

54.

During that meeting, Ms. Wright was told that there had been some complaints from some of her residents, but Trimark would not provide Ms. Wright with the names of any of the residents who allegedly complained.

55.

Ms. Wright was told that the complaints dealt with her not being friendly, helpful, or available. Ms. Wright emphatically denied the allegations made by Trimark.

56.

During that meeting, Ms. Wright was never told that she was not providing her residents with the care that they were supposed to receive.

57.

Finally, on March 12, 2014, Ms. Wright was told not to report to work the next day and again asked to come to Trimark's office on March 14, 2014.

58.

When Ms. Wright arrived on March 14, 2014, she was met by Ms. Snerley and Ms. Adkins, who told her that she was being fired due to a resident's complaint. Ms. Wright once again emphatically denied the allegations made by Trimark.

59.

Prior to bringing her complaints of FLSA violations to the attention of Trimark on July 19, 2013, Ms. Wright had an exemplary performance record with Trimark.

60.

Management of Trimark was discussing Plaintiffs' complaints of FLSA violations and the threatened lawsuit with members of its staff and employees at Delmar Gardens.

61.

Ms. Barrett also received a telephone call from a caregiver at Trimark who said that she heard the other Trimark caregivers at Dunwoody Pines, another

location where Trimark provided services, talking about Ms. Wright and saying that Ms. Wright was suing Trimark for unpaid overtime.

62.

On or about February 25, 2014, Sandi Armstrong, Delmar Gardens Activity Director, walked in on a meeting in the office of the Assistant Executive Director at Delmar Gardens. The Assistant Executive Director, Kelly Beasly, was meeting with Ms. Adkins and Ms. Pounders. The topic of conversation, which stopped immediately upon Ms. Armstrong's arrival into the office, was Plaintiffs' threatened lawsuit for unpaid overtime.

63.

After the meeting, Ms. Armstrong was approached by Ms. Beasley. Ms. Beasley said to Ms. Armstrong, "Can you believe that Joy is suing Trimark for unpaid overtime?"

64.

Ms. Armstrong replied, "Well, Kelly, we all know that Trimark does not treat its employees fairly."

## COUNT I - FAILURE TO PAY OVERTIME

65.

The allegations in all previous paragraphs above are incorporated by

reference as if fully set out in this paragraph.

66.

At all times relevant to this suit, each Plaintiff has been an "employee" of Trimark as defined in the FLSA § 3(e)(1), 29 U .S.C. § 203(e)(1).

67.

At all relevant times, the work performed by Plaintiffs was directly essential to the business operated by Trimark.

68.

At all relevant times, Plaintiffs have been covered employees within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and entitled to the overtime protections set forth in FLSA § 7(a), 29 U.S.C. § 207(a).

69.

Plaintiffs are not subject to any of the exemptions under the FLSA.

70.

At all relevant times, Trimark was, and continues to be, an "enterprise engaged in commerce" as defined in the FLSA, § 6(a), 29 U.S.C. § 206(a) and FLSA, § 7(a)(1), 29 U.S.C. §207(a)(1 ).

71.

At all times relevant to this suit, Trimark has been an "employer" of Plaintiffs as defined in FLSA § 3(d), 29 U.S.C. §203(d).

72.

At all relevant times, Trimark employed Plaintiffs within the meaning of the FLSA.

73.

On information and belief, at all relevant times, Trimark had gross revenues in excess of $500,000 (exclusive of excise taxes at the retail level that are separately stated) within the meaning of 29 U.S.C. § 203(s)(1)(A).

74.

During their employment with Trimark, Plaintiffs regularly worked in excess of forty (40) hours each week.

75.

Trimark has never paid Plaintiffs any overtime compensation in the lawful amount for all hours worked in excess of the maximum hours provided for in the FLSA.

76.

Trimark is legally required to pay and Plaintiffs are legally entitled to be paid at the rate of time and one-half the statutory minimum for all hours worked in excess of the maximum hours provided for in the FLSA.

77.

At all relevant times, Trimark knowingly and willfully failed to pay Plaintiffs their lawfully earned overtime wages in direct contravention of the FLSA.

78.

Trimark knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs at the statutory overtime rate of time and one-half for all hours worked in excess of forty (40) hours per week, when it knew or should have known such was due and that non-payment of overtime pay would financially injure Plaintiffs.

79.

At all relevant times, Trimark had, and continues to have, a policy and practice of refusing to pay overtime compensation at the statutory rate of time and one-half for all hours worked in excess of forty (40) hours per work week, which

violated and continues to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1), 215(a), 216(b).

### 80.

Trimark knowingly and willfully operated its business under a policy of not paying Plaintiffs and other employees the FLSA-required overtime rate of time and one-half, in direct violation of the FLSA and the supporting federal regulations.

### 81.

Trimark failed to properly disclose or apprise Plaintiffs of their rights under the FLSA.

### 82.

Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

### 83.

Some of the records concerning the number of hours worked by Plaintiffs and the actual compensation paid to Plaintiffs are still in the possession and custody of Trimark. Plaintiffs intend to obtain these records by appropriate discovery to be served promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amounts due to each Plaintiff.

84.

As a direct and proximate result of Trimark's willful disregard of the FLSA, Plaintiffs are also entitled to liquidated damages pursuant to the FLSA.

85.

Due to the intentional, willful and unlawful acts of Trimark, Plaintiffs suffered damages of unpaid overtime compensation, an equal amount as liquidated damages, compensatory damages, and prejudgment interest. Plaintiffs are also entitled to declaratory and injunctive relief.

86.

Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**COUNT II – RETALIATION**

87.

The allegations in all previous paragraphs above are incorporated by reference as if fully set out in this paragraph.

88.

On July 19, 2013, Plaintiffs complained to Trimark of FLSA violations. They continued to communicate with Trimark about FLSA violations through February 24, 2014.

89.

After that July 19th communication and during the subsequent and ongoing communications between the parties about violations of the FLSA, Trimark retaliated against Plaintiffs for their complaints of FLSA violations and their threatened lawsuit.

90.

But for Plaintiffs' complaints of FLSA violations and their threatened lawsuit, Trimark would not have taken the retaliatory actions described in detail above.

91.

Trimark has retaliated against Plaintiffs in violation of 29 U.S.C. § 215(a)(3).

92.

Due to the intentional, willful and unlawful acts of Trimark, Plaintiffs suffered damages for back pay and front pay, liquidated damages in an amount equal to the back pay and front pay, compensatory damages, and prejudgment interest. Plaintiffs are also entitled to declaratory and injunctive relief.

93.

Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand a TRIAL BY JURY and pray for the following relief:

(a) Declaratory judgment that the practices complained of herein are unlawful under the FLSA;

(b) Injunction against Trimark, and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it as provided by law, from engaging in each of the unlawful practices and policies set forth herein;

(c) Award of unpaid overtime wages due under the FLSA;

(d) Award of back pay and front pay;

(d) Award of liquidated and/or punitive damages as a result of Trimark's knowing and willful failure to pay overtime compensation pursuant to FLSA;

(e) Award of compensatory damages for emotional distress;

(f) Award of prejudgment and post-judgment interest;

(g) Award of costs and expenses associated with this action, together with reasonable attorney's and expert fees; and

(h) Other and further relief as this Court determines to be just and proper.

Respectfully submitted this 1st day of May, 2014.

/s/ Jonathan R. Poole
Mary M. Brockington
Georgia Bar No. 084220
mmb@sbllaw.net
Jonathan R. Poole
Georgia Bar No. 142311
jrp@sbllaw.net
STRICKLAND BROCKINGTON LEWIS LLP
Midtown Proscenium, Suite 2200
1170 Peachtree Street, NE
Atlanta, Georgia  30309
Telephone: (678) 347-2200
Facsimile:  (678) 347-2210

*Attorneys for Plaintiffs*